UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


|                                | )   |                    |
| ------------------------------ | --- | ------------------ |
| UNITED STATES OF AMERICA,      | )   |                    |
|                                | )   |                    |
| Plaintiff,                     | )   |                    |
|                                | )   | Criminal Action    |
| v.                             | )   | No. 12CR10266-NMG  |
|                                | )   |                    |
| DARRELL GRAHAM,                | )   |                    |
|                                | )   |                    |
| Defendant.                     | )   |                    |
|                                | )   |                    |


BEFORE THE HONORABLE NATHANIEL M. GORTON, DISTRICT JUDGE


SENTENCING


Thursday, September 11, 2014
2:58 p.m.


John J. Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts  02210


Kelly Mortellite, RPR, CRR
Official Court Reporter
John J. Moakley United States Courthouse
One Courthouse Way, Room 5200
Boston, Massachusetts  02210
mortellite@gmail.com

APPEARANCES:

On Behalf of the Government:
    UNITED STATES ATTORNEY'S OFFICE
    By:  S. Theodore Merritt
    One Courthouse Way
    Boston, Massachusetts 02210
    617.748.3123
    theodore.merritt@usdoj.gov

On Behalf of the Defendant:
    COLLORA LLP
    By:  Daniel J. Cloherty, Esq.
         Elizabeth R. Carr
    100 High Street
    Boston, Massachusetts 02110
    617.371.1037
    dcloherty@collorallp.com
    ecarr@collorallp.com

```
 1                   P R O C E E D I N G S

 2           DEPUTY CLERK:  This is Civil Action Number 12-10266,

 3     the United States of America v. Darrell Graham.

 4           Would counsel please identify themselves for the

 5     record.

 6           MR. MERRITT:  Good afternoon, Your Honor.  Theodore

 7     Merritt on behalf of the government.  Ms. Barclay is with Judge

 8     Young.  I expect she will be joining us shortly.

 9           THE COURT:  Mr. Merritt, good afternoon.

03:12 10        MR. CLOHERTY:  Good afternoon, Your Honor.  Daniel

11     Cloherty here on behalf of the defendant, Mr. Graham.

12           MS. CARR:  And Elizabeth Carr also on behalf of Mr.

13     Graham.

14           THE COURT:  Mr. Cloherty, Ms. Carr, and Mr. Graham.

15     Good afternoon.  We have Ms. Broquist from probation.  Good

16     afternoon to her.

17           We're here on the sentencing of Mr. Darrell Graham,

18     and I have received and read the presentence report, the United

19     States sentencing memorandum, to which several exhibits were

03:13 20   attached, the defendant Darrell Graham's sentencing memorandum,

21     also to which several exhibits were attached, a group of now

22     six letters.  They were supplemented this morning by three more

23     letters in support of the defendant from his mother, his wife,

24     his sister, his brother, a pastor and a Cambridge School

25     Committee member.
```

1          Those are all the writings I've received.  Is there

2     anything that I didn't mention that I should have received,

3     Mr. Merritt?

4          MR. MERRITT:  The only thing, Your Honor, I actually

5     tendered today is some documentation with respect to the

6     restitution, which I can provide a copy to you.

7          THE COURT:  Well, I haven't seen it, but I would

8     entertain having a copy, if you have it.  You've given a copy

9     to defense counsel?

03:14 10          MR. MERRITT:  Yes, Your Honor, and probation.

11          MR. CLOHERTY:  Yes, Your Honor.

12          THE COURT:  And what is, briefly, in summary, the

13     government's position on restitution?

14          MR. MERRITT:  Well, Your Honor, the bulk of the

15     restitution that we've asked the Court to impose is based on

16     the reasonable estimate of the income derived from the

17     prostitution that the defendant caused, and I think in our

18     sentencing memo we cite a couple of cases that have used that

19     formula as a measure.  The documents that I've submitted to the

03:14 20     court are for the additional losses caused by the defendant.

21     One is a $2,607 Social Security check that the defendant had

22     the victim cash and took the proceeds, there's a $2,046 unpaid

23     AT&T phone bill that the defendant caused the victim to use

24     that phone and it's in her name, and then there's a $50 unpaid

25     medical bill.

 1          THE COURT:  I take it there's no precision involved in

 2    this calculation, Mr. Merritt?

 3          MR. MERRITT:  Well, in the first part, there is no

 4    precision.  It's based on an estimate of the number of

 5    commercial sex acts that were caused to be performed by the

 6    average price.

 7          THE COURT:  Yeah.  So that's what I'm saying.  There

 8    is no precision involved here, correct?

 9          MR. MERRITT:  That's correct.

03:15 10          THE COURT:  Okay.  Thank you.

11          All right.  Then there were several objections on both

12    sides offered by the government and by the defendant, and I

13    think we need to proceed one after the other to consider these

14    objections.

15          The first objection of the government was with respect

16    to the probation officer's failure to include a recommended

17    enhancement of two levels under Section 3A1.1(b)(1) of the

18    guidelines for the fact that the victim was a vulnerable

19    victim.  And I have read the probation officer's response to

03:16 20    that, and I am inclined to agree with the prohibition officer,

21    but I will hear the government if it wishes to supplement the

22    argument that it has made in writing.

23          MR. MERRITT:  Well, I don't think I have that much to

24    supplement, Your Honor.  I think the only thing that probation

25    mentioned, that this could possibly be double counting, if it

1    was to apply, but I don't think that's necessarily correct

2    because that requires that to be impermissible double counting,

3    that that factor be already incorporated in the guideline to

4    which is being applied.

5          And I don't think the kinds of vulnerabilities that we

6    suggest this victim had is incorporated in the cross-reference

7    to the fear factor.  For instance, that it was also, that it

8    was known to the defendant that the victim was an alcohol

9    abuser, that she was in a shelter, that she had told him that

03:17 10   she had had a rough life and no one cared for her.  This was

11   the kind of person that he would target because she'd be less

12   likely to resist the kind of control he exerted as her pimp.

13         So I don't think it's controlled by *Sabatino*, and I

14   think the probation department agrees that's not directly on

15   point because that really reflects, I think, the typical Mann

16   Act where the victim is more voluntarily involved either --

17   because of economic dependence, so I think there is a

18   distinction to be made.  And as we suggest in our brief, in

19   many cases such as this, the Courts have applied the vulnerable

03:18 20   victim where there is the kind of evidence of coercion that we

21   think is present here.

22         THE COURT:  Mr. Cloherty, do you wish to respond?

23         MR. CLOHERTY:  Sure.  I'm sure the Court has already

24   read our written submission on this.  We do think *Sabatino*

25   controls.  The government reads *Sabatino* too narrowly.  The

1    language in *Sabatino* says it looks for proof that distinguishes

2    the victim from typical individuals that would fall prey to a

3    Mann Act violator.  I don't think any of the factors identified

4    the government's move the victim outside the realm of the

5    typical Mann Act victim.

6          Ultimately, also as a buttress to that, and I think we

7    made the same argument that probation made, that there is some

8    double counting here because the elements or the facts that the

9    government is relying on for the cross-reference enhancement

03:19 10   overlaps significantly with the type of argument they're making

11   here on the vulnerable victim.

12         So I think both those arguments are right.  I do think

13   there are other cases out there.  I think *Sabatino* controls

14   here, and I don't think the enhancement is appropriate.

15         THE COURT:  All right.  The Court agrees with the

16   probation officer and in this case with defense counsel that

17   vulnerability is accounted for by the adoption of Section

18   2A3.1, criminal sexual abuse.

19         And I'm sure I'm going to hear a contrary argument in

03:19 20   a moment from Mr. Cloherty, but the Court is going to go the

21   other way on that particular finding, which we will get to in a

22   moment.

23         So Objection Number 1 of the government is overruled.

24         Objection Number 2 of the government has to do with

25   the scoring of two convictions with respect to drug trafficking

1    in the 1980s.  The probation officer disagrees because custody

2    translates in time elapsed convictions that cannot be scored.

3    The way that the timing is computed, I believe, is correctly

4    calculated by the probation office.  But again, Mr. Merritt, if

5    you wish to be heard on that, I'll hear you.

6            MR. MERRITT:  No, Your Honor.  I think we actually

7    withdraw that part of the objection.  We still -- I don't know

8    if it's an objection, but we still think it should then be

9    looked as an upward departure.

03:20 10          THE COURT:  Yes, and I will do that.

11           And turning to the defendant's objections, and there

12   were, I believe, 20.

13           MR. CLOHERTY:  Well, I don't want to -- I'll allow you

14   to proceed, Your Honor.  I do want to also add that when you

15   get to the criminal history, I'll withdraw that objection as

16   well.

17           THE COURT:  Fair enough.  When we get to that point,

18   you can shortcut me when I start to deal with that.

19           MR. CLOHERTY:  Okay.

03:21 20          THE COURT:  Objection Number 1 was simply a correction

21   and informational, so I'm not going to deal with that further.

22           Objection Number 2, in my opinion, is informational.

23           Objection Number 3 is, in fact, substantive.  It has

24   to do with which base offense level we choose and whether or

25   not the cross-reference in 2G1.1 to Section 2A3.1 is an

1    appropriate one because it makes a substantial difference

2    whether we're dealing with a base offense level of 30 rather

3    than a base offense level of 14 under the 2G1.1 guideline.

4         Here I am convinced by the arguments made by the

5    probation officer, and more particularly by the government,

6    that this defendant did, in fact, place his victim in fear and

7    that, therefore, the cross-reference in 2G1.1(c) to 2A3.1,

8    which calls for a higher base offense level, is imminently

9    reasonable; and therefore, I agree with the probation's

03:22 10   position on that.

11        I will hear Mr. Cloherty if he wishes to be heard in

12   that regard.

13        MR. CLOHERTY:  Well, Your Honor, your ruling is

14   somewhat unambiguous.  I don't want to belabor something that

15   I'm sure the Court considered carefully.

16        THE COURT:  Well, of course I am fully mindful that,

17   though you are arguing for a guideline range of 21 to 27

18   months, your client has agreed in writing to a C plea that

19   calls for a low end sentence of 120 months.  It's unclear to me

03:22 20   how you can make the argument you made with a straight face.

21        MR. CLOHERTY:  Well, I think parties can agree --

22   well, I think I can.  It was not intended to be raised

23   frivolously.  There's no doubt -- and I think I tried to be

24   clear, in newer submission, that we are not arguing for a

25   sentence less than 120 months consistent with the agreement.

1          The Court can weigh a lot of factors.  Obviously, in a

2    C plea context, the Court has a good deal of discretion.  So at

3    the same time --

4          THE COURT:  I have more discretion in the C plea than

5    I've ever had in any C plea before me.  I mean, this is an

6    unusual situation where you file a C plea and have a range of

7    between 120 and 180 months, five years.

8          MR. CLOHERTY:  I suppose that's right, Your Honor.

9    Part of that reflects different views from the parties on the

03:23 10   facts here.  And I think we have already laid out, I think, for

11   you the contemporaneous, what we think the best evidence which

12   relates to contemporaneous evidence of communications that

13   would support the conclusion that the cross-reference should

14   not apply.

15         But again, I don't think it's -- I think that's laid

16   out clearly in the submission.  The Court has made a ruling.

17   And while I have a different view, I'm not sure a lengthy

18   argument at this point -- I would like to talk about some of

19   that evidence, even with the finding, may be relevant to where

03:24 20   the Court ends up.

21         THE COURT:  And I appreciate that.  That is the reason

22   why you made the argument.  I perhaps facetiously used the term

23   "straight face."  I understand where you're making the

24   argument, but we are, in fact, dealing with a low end sentence

25   here that's going to end up probably higher than the guideline

1   range that will compute even with this higher base offense

2   level, right?

3           MR. CLOHERTY:  It depends.  We're not done with our

4   objections.

5           THE COURT:  Yes.

6           MR. CLOHERTY:  But where the Court has signaled thus

7   far suggests that our low end would be within the range that

8   probation has proposed.

9           THE COURT:  Okay.  That deals with Objection Number 3

03:25 10  of the defendant, which is overruled.

11          Objection Number 4 is informational.  I don't need to

12  deal with it further.  Objections 5 and 6 are co-extensive with

13  Objection Number 3, which I just dealt with, and therefore are

14  overruled.

15          Objection Number 7 has to do with the offense behavior

16  not part of relevant conduct section of the presentence report.

17  The Court deems that to be informational, that the Court can

18  consider that not relevant conduct, if it chooses to or not

19  consider it.  And therefore, I find that it is informational

03:25 20  and overrule that objection.

21          I'll hear you, Mr. Cloherty, if you wish to be heard

22  further on that.

23          MR. CLOHERTY:  I don't, Your Honor.

24          THE COURT:  Okay.  Then with respect to Objections 8,

25  9 and 10, this has to do with the addition of one criminal

1    history point for the negligent operation of a motor vehicle

2    conviction.  And the defendant argues that it was not a felony.

3    Probation office corrects defense counsel that it is, in fact,

4    considered under Massachusetts law a felony because it's

5    subject to a sentence of more than one year.

6         I agree with probation and, therefore, I think that

7    that conviction was properly scored, although, of course, it

8    has no impact on the guideline range.

9         MR. CLOHERTY:  It doesn't, and I withdraw that

03:26 10    objection.  I apologize --

11         THE COURT:  All right.  Thank you.

12         MR. CLOHERTY:  -- for missing that one.

13         THE COURT:  Thank you.  Then Objections 11 through 16

14    were actually corrected by the probation office, so they are

15    sustained as are Objections 17 and 18.

16         Objection Number 19 and, in fact, also 20 are

17    derivative objections, and the ruling that I made with respect

18    to Objection Number 3 having to do with the fear factor apply

19    to these, and those objections are overruled.

03:27 20         I believe that completes my dealing with the

21    objections, unless there are some that I missed.  Mr. Cloherty?

22         MR. CLOHERTY:  None that I see, Your Honor.

23         THE COURT:  Or Mr. Merritt?

24         MR. MERRITT:  No, Your Honor.

25         THE COURT:  Okay.  Then we need to turn to the

1     recommendations for the establishment of the appropriate

2     guideline range.  And those recommendations are made for me in

3     the presentence report starting on Page 8, where I am advised

4     that the 2013 guideline manual that is the most recent one in

5     edition, in publication, is the right manual to be dealing

6     with.  And under that guideline manual, as I previously alluded

7     to, both guideline Sections 2G1.1 and 2A3.1, that is the

8     criminal sexual abuse guideline, apply because of the

9     cross-reference in 2G1.1 and because the Court finds that the

03:28 10     victim in this case prostituted herself because she feared that

11     the defendant would harm her, I believe 2A3.1 applies, and that

12     calls for a base offense level of 30.

13          The defendant is entitled to a three-level downward

14     adjustment for his acceptance of responsibility and, therefore,

15     ends up with a total offense level of 27.

16          Do counsel agree with the calculations that the Court

17     has made.  Mr. Merritt?

18          MR. MERRITT:  Yes, Your Honor.

19          THE COURT:  Mr. Cloherty?

03:29 20          MR. CLOHERTY:  Yes, Your Honor.

21          THE COURT:  Okay.  Then we turn to the defendant's

22     criminal history, which is one of the longest I have seen in my

23     years.  It consumes 20 pages of the presentence report.  Not

24     all, of course, are scored convictions because of the age of

25     many of them back in the 1980s and '90s.  But there are, I

1    believe, four scored convictions.  One from 1991 for possession

2    with intent to distribute cocaine for which the defendant gets

3    three criminal history points; a second scored conviction for a

4    conviction in 1997 for distribution of a controlled substance,

5    in this case heroin, he gets three more criminal history points

6    for that; and then a conviction in 2005 for negligent operation

7    of a motor vehicle.  He gets one point for that.  Another

8    conviction in '08 for a similar offense involving motor

9    vehicles, another point for that; and finally, a third motor

03:30 10   vehicle point for a conviction in 2009 for operating a vehicle

11   after license suspension.

12           That yields a total number of criminal history points

13   of nine, and therefore the defendant falls in criminal history

14   category Roman numeral IV.

15           Do counsel agree with all of those calculations?

16           MR. MERRITT:  Yes, Your Honor.

17           MR. CLOHERTY:  Yes, Your Honor.

18           THE COURT:  The Court so finds.  And that means that

19   under the guideline ranges, offense level 27, guideline

03:30 20   criminal history category Roman numeral IV, the sentencing

21   range is 100 to 125 months, which does overlap the low end of

22   the agreed range.

23           I will now hear the requests of the government for an

24   upward departure with respect to the criminal history category.

25           MR. MERRITT:  All right, Your Honor.  But also, I just

1    wanted to -- I don't know if it's the appropriate time at this

2    point, but I think we also need to deal with an amendment to

3    the agreed plea agreement.

4         THE COURT:  I'm sorry?

5         MR. MERRITT:  An amendment to the agreed disposition

6    for the plea agreement.

7         THE COURT:  Yes, with respect to supervised release.

8    You may do that.

9         MR. MERRITT:  Your Honor, I think as the Court has

03:31 10   been -- has its attention drawn to the plea agreement, under

11   Rule 11(e)(1)(C), required agreed disposition to be three years

12   supervised release, frankly, both parties missed the fact that

13   there is a mandatory five-year supervised release provision

14   which probation has also pointed out in the PSR.  And I just

15   think that the Court should perhaps get on the record if the

16   defendant concurs with that amendment to the agreement.

17        THE COURT:  Yes.  In other words, before the Court

18   decides whether or not to accept the binding C plea,

19   Mr. Cloherty, do you acknowledge that it should be amended to

03:32 20   provide for a supervised release term of five years as opposed

21   to three?

22        MR. CLOHERTY:  We do, Your Honor.  Both counsel missed

23   this, I guess I have to acknowledge, government counsel and us.

24   I would ask that the Court -- and I think that the Court can --

25   as we mentioned before, the Court has a lot of discretion in

1   this matter in ultimately shaping the sentence, that the Court

2   consider the fact that the deal that we had cannot be precisely

3   the deal that the Court imposes.

4        So I think you can -- while you cannot under the law,

5   as I understand it, impose a lesser term of supervised release,

6   it may be a factor, and I think it should be a factor the Court

7   considers when devising the portion of the sentence that the

8   Court does have discretion on, which relates to the term of

9   imprisonment.  I'm not asking for a day for a day, but what I

03:33 10   am saying is it's something that the Court can factor in.

11        THE COURT:  Well, in fact, as the probation officer

12   has pointed out to me and no doubt to you, there also is the

13   opportunity for the defendant after a year of imprisonment to

14   apply for a reduced length of supervised release, which the

15   Court is then within its discretion to grant.

16        And so I will just leave it at that; that if this is a

17   factor that was crucial as part of the C plea negotiation, you

18   may wish to file a motion at some stage in the future, but

19   that's up to you.

03:33 20        MR. CLOHERTY:  Thank you very much.  I appreciate

21   that, Your Honor.

22        THE COURT:  Okay.  All right.  So the Court then

23   agrees that the C plea as filed ought to be amended to include

24   a supervised release term of five years rather than three

25   years.

1          MR. MERRITT:  I guess I would just ask the Court if we

2     could make inquiry of the defendant himself if he understands

3     that and agrees to it.

4          THE COURT:  All right.  Mr. Graham, have you

5     understood what's going on here with respect to the supervised

6     release term?

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  And you understand the reasons why it

9     needs to be an amendment to the C plea, correct?

03:34 10          THE DEFENDANT:  Yeah, I understand.

11          THE COURT:  Okay.  Anything further?

12          MR. MERRITT:  Fine with that.

13          THE COURT:  All right.  I am at the point where you

14     have in your filings, Mr. Merritt, asked for the Court to

15     consider an upward departure with respect to the criminal

16     history category in which this defendant has been found.

17          MR. MERRITT:  Yes, we did, Your Honor.  And we think

18     it is justified either as a departure in the first instance or

19     certainly is a very important factor as a variance in

03:35 20     considering where in that range of ten to 15 years the Court

21     should fall.

22          I think it meets the requirements of an upward

23     departure because otherwise the record substantially

24     under-represents the seriousness of the defendant's criminal

25     history or the likelihood that the defendant will commit other

1    crimes.

2          You have here numerous other serious convictions, for

3    instance, he was first convicted of a pimping offense when he

4    was only 18 years old in 1981.  There are eight convictions

5    that are uncounted as time-barred.  He was also arrested for

6    the same kind of unlawful conduct that he's charged in this

7    case, in 1981 in Phoenix, in 2009 in Somerville.  So

8    essentially the category IV, I think, Your Honor, is not a true

9    reflection of someone that has had this long history.  And, you

03:36 10   know, given the odds, it doesn't look like rehabilitation is

11   necessarily something that is reflected by a category IV

12   either.

13         THE COURT:  Thank you.  Mr. Cloherty.

14         MR. CLOHERTY:  Your Honor, we do think category IV is

15   appropriate, and we think the timing rules are in place for a

16   reason.

17         I recognize Mr. Graham has a long criminal history.

18   Part of that, obviously, is the number of convictions.  Part of

19   it is his age.  But I do think the Court -- and I think we

03:36 20   mention this in our brief -- if the Court takes a look at those

21   convictions and where they fall in the timeline, and there is a

22   reflection here of a change of behavior.  Mr. Graham has a

23   series of serious drug offenses in the 80s and 90s for which he

24   received serious prison sentences.

25         If we were looking, you know, from 2000 back, at that

1     point his category would be higher; but I do think by trying to

2     upward depart, you deprive him of the benefit of what was a

3     period of sobriety for him that's quite clear coming out of

4     when he was incarcerated and where he had gotten some

5     substantial treatment, there is a period where the nature of

6     the type of offense is downgraded significantly.  He certainly

7     got some scores for driving offenses and other things, but they

8     are not of the same type and quality of what we have early in

9     his history.

03:37 10           And I think, Your Honor, that the score appropriately

11    reflects that.  In other words, he is still penalized

12    significantly for some of those prior offenses and does receive

13    some modification as he has fewer more recent crimes.  I think

14    for the Court to upward depart based on the much older offenses

15    would, I think, unfairly punish him for much earlier crimes.

16           So that's where we are.  I think it's reflected in the

17    sort of run of his criminal history.  Thank you.

18           THE COURT:  All right.  Thank you, counsel.  After

19    careful consideration of this matter over a considerable period

03:38 20    of time, the Court is going to upwardly depart with respect to

21    the defendant's criminal history category and place him in

22    criminal history Roman numeral V, because I believe the record

23    does substantially under-represent his criminal history.  And

24    those are the grounds upon which this upward departure is to be

25    made.

1            I point out it will have no direct bearing upon the

2      sentence imposed on this defendant which has already been

3      agreed to be between 120 and 180 months, but I believe it is

4      appropriate nevertheless to establish his criminal history

5      category as Roman numeral V.  And that does, in fact, change

6      the guideline range from 100 to 125 months to a range of 120 to

7      150 months.

8            So having now completed all of the guideline details

9      that I need to deal with, I will hear recommendations for

03:39 10      sentencing, first from the government, Mr. Merritt.

11            MR. MERRITT:  Yes, Your Honor.  I also wanted to point

12      out, Your Honor, that the victim does want to make a statement.

13            THE COURT:  Yes, and the victim will be entitled to

14      make a statement after you have given me your recommendation

15      and the defendant's counsel has given me his.

16            MR. MERRITT:  Okay.  Well, as we say in our sentencing

17      memo, Your Honor, we think the Court should impose the maximum

18      sentence on the agreement:  15 years in prison, five years

19      supervised release, a $300 special assessment, restitution in

03:40 20      the amount of $58,703 and an order of forfeiture in the amount

21      of $13,500.

22            THE COURT:  Where does that come from, the forfeiture?

23            MR. MERRITT:  Well, the forfeiture, Your Honor, is the

24      proceeds of the three counts of conviction that he's pleading

25      to.  In other words, in those three counts where he went across

1    those particular state lines and there was commercial sex

2    activity in that time period, that's how the government

3    computed forfeiture.

4           THE COURT:  And that's a monetary imposition rather

5    than specific assets; is that right?

6           MR. MERRITT:  Yes, Your Honor.

7           THE COURT:  Okay.  In other words, it's a money

8    judgment forfeiture as opposed to a specific asset forfeiture?

9           MR. MERRITT:  Yes, Your Honor.

03:40 10          THE COURT:  All right.

11          MR. MERRITT:  Anyway, with respect to the reasons for

12    that, Your Honor, I think a maximum sentence is warranted in

13    this case because of the despicable conduct of the defendant;

14    in clearly exploiting the vulnerabilities of a 19-year-old girl

15    for the sole benefit of his own financial advantage.  He did it

16    first by deception, promising her a better life, but that life

17    turned out to be using her as simply a money-making, non-person

18    whom he controlled every aspect of her life.

19          And later in that period, he used violence to make

03:41 20    sure that she did know who was in control.  So both as a

21    deterrent to the defendant himself, who as the Court has

22    already recognized has a long history dealing drugs, pimping

23    out young women, but also as a deterrent to all those other

24    pimps out there who think that this is a profitable and

25    relatively safe way to make money, I think the Court should

1  sentence the defendant to the 15-year prison sentence as well

2  as the other conditions.

3        THE COURT:  All right.  Thank you, Mr. Merritt.

4  Mr. Cloherty.

5        MR. CLOHERTY:  Your Honor, we do recommend that the

6  Court impose a sentence at the low end of both the C plea,

7  which would be 120 months, ten years, which also happens to be

8  at the low end but still within the guideline range that the

9  Court has already found.

03:42 10        This case -- and I'm going to deal largely with the

11  sentence of imprisonment.  I don't know when the Court would

12  like to hear from me on conditions.  I do have some questions

13  and I want to raise some issues related to the conditions.

14        THE COURT:  Well, whenever you want to make that, you

15  can make it now.

16        MR. CLOHERTY:  Sure.  Let me first address the

17  sentence, Your Honor.  I recognize, and I'm not going to

18  revisit, as I signaled already, the Court's ruling relating to

19  the application of the cross-reference, which is a conclusion

03:43 20  that the victim in this case engaged in sexual activity due to

21  fear of the defendant.  We obviously factually disputed that.

22  We continue to factually dispute that.  And we think the

23  contemporaneous record reflects otherwise.

24        But even with the Court's ruling, I think the Court

25  should acknowledge the substantial evidence that we submitted

1   that shows much of the activity that occurred during the course

2   of this case was voluntary by the victim.

3        The contemporaneous shelter records show that the

4   victim in the shelter, not in the presence of the defendant,

5   made the decision to engage in prostitution, explaining to her

6   counselor that she's -- I'm sorry to put it crassly for the

7   record -- that she was going to have sex anyway; she might as

8   well get paid for it.  There are lots of contemporaneous text

9   records that show that the victim was voluntary and willingly

03:44 10   participated in the activity.

11        Those records show, among other things, that many

12   times the defendant was not around.  The practice continued.

13   There is -- in fact, that's unambiguous in the record.  There

14   is the testimony of the defendant herself who, after she left

15   Mr. Graham, decided to come back.  And the government and the

16   grand jury asked her, Why did you come back, and she explained

17   that she came back because of her difficult financial

18   condition, it's sort of a painful explication -- it's in our

19   brief -- and also because of some jealousy towards another

03:44 20   prostitute that Mr. Graham was working with.

21        There is a lot of -- as I say in my brief, or not

22   brief -- there is a lot of complex emotion expressed by the

23   defendant there.  And in the text messages themselves, there's

24   a complex relationship between the defendant and the victim.

25        And while the Court has found that there perhaps is an

1    element of fear, I'll acknowledge that the Court has found

2    that, but the Court should also recognize the complexity of

3    that human relationship and the manner of those interactions

4    are such that it is not at the extreme end of a case -- of some

5    of the cases even cited by the government.  Some of the cases

6    cited by the government talk about people who were imprisoned,

7    people who are really held in very difficult, harsh conditions.

8    That's not what happened here.

9         So notwithstanding the fact that the Court has found

03:45 10    the application of the cross-reference, I think the Court can

11    also weigh the interaction between these two individuals and a

12    relationship between them in those text messages that I'm sure

13    the Court has read and gone through carefully.  And that weighs

14    towards the low end, Your Honor, and it weighs towards the low

15    end because, even if we're over the rail on the

16    cross-reference, I would suggest that we're only barely over

17    the rail.  And I don't think it's a black and white issue.

18         And I think human relationships in this context are

19    not so simple that, once there's some element of fear, that the

03:46 20    rest of those text messages and the rest of the communications

21    should be erase d.

22         I've mentioned, I've referenced in my brief the fact

23    that, in fact, the victim herself, nine months later, explained

24    to federal agents that it wasn't until she had moved to Florida

25    that she realized she had been a victim of Mr. Graham.

1          Now, again, the Court has made its conclusion, and I

2     understand that.  But if the victim herself didn't come to that

3     realization until after the fact, then I would suggest to Your

4     Honor that we ought to be at the low end of what is already a

5     very, very harsh sentence for Mr. Graham.  So that's that part

6     of it.

7          I'd like to raise a couple of other issues.

8     Mr. Graham -- with respect to the probation office's proposed

9     conditions of release, there is no doubt that Mr. Graham --

03:47 10     actually, before I even get there, I should ask, I have asked

11     for, I believe probation supports it, but that Mr. Graham,

12     whatever sentence is imposed, be recommended for the 500-hour

13     drug treatment program.  It is somewhat indisputable through

14     both his personal records as well as through the letters of

15     family that Mr. Graham has struggled with substance abuse for

16     much of his life.

17          As I mentioned before in the criminal history

18     argument, the one period of sobriety showed the period of

19     promise in the 2000s where he actually started to get on his

03:48 20     feet, started a real estate business that, unfortunately,

21     collapsed along with a lot of other real estate businesses in

22     the late 2000s, which then led him to substance abuse, which

23     led him back to behavior that he's not proud of and that he's

24     not happy, and that ultimately led him before you today.  I do

25     think a real substantive treatment, there are a lot of negative

1   things about being part of the federal criminal justice system.

2   The sentences are tough, and the discipline is very difficult

3   here.

4         The advantages are the opportunity for, I think, a

5   more substantive treatment program both while he's incarcerated

6   as well as when he gets out through probation.

7         With respect to the later part on supervised release,

8   the government -- probation has recommended fairly strict

9   conditions related to treatment, and I would ask that they not

03:48 10  be imposed mandatorily but rather, and Mr. Graham is open to

11  treatment, certainly I believe treatment will probably be part

12  of his supervised release.  But it ought to be assessed at the

13  time.  No matter what the Court does today, that is a good deal

14  down the road, and that he ought to be assessed at the time and

15  then go to whatever treatment probation recommends for him at

16  that time.

17        I also think some of the recommendations by probation

18  are inappropriate insofar as there is a proposed condition that

19  would actually restrict his contact with minors or individuals

03:49 20  under 18.  I don't think there's a basis for that here, Your

21  Honor.

22        THE COURT:  Which one are you looking at?

23        MR. CLOHERTY:  I believe it was 15 and 16, but it may

24  have dropped down because a few other conditions were --

25        MS. BROQUIST:  18 and 19, Your Honor.

1          THE COURT:  18 and 19.

2          MR. CLOHERTY:  With respect, I don't think that's what

3     we're talking about here.  I don't think the evidence supports

4     that.  Mr. Graham has a family.  He has grandchildren that are

5     an important and critical part of his life.  I don't think that

6     ought be -- either of those types of restrictions ought to be

7     imposed in 18 and 19.

8              Above that, Your Honor, there are serious restrictions

9     on Mr. Graham's use of a computer, and that relates to -- I

03:50 10     think, these are proposed restrictions that begin at Number 13

11     and run through, ultimately, somewhat through Number 17.  And

12     in this modern age, Your Honor, our hope and certainly

13     Mr. Graham's hope is that he has some chance at a productive

14     life once he gets out.  It is almost impossible to find a job,

15     do anything or even exist in modern society without some

16     access.

17              Of course he needs to have contact with a supervising

18     officer; and if the officer wants to impose some narrower

19     restriction that makes sense given where he is and what he's

03:51 20     going to be doing, I don't have an objection to that.  But this

21     very broad restriction on computer use is quite burdensome.  It

22     would even seem to impose burdens on whoever he lives with,

23     which then could have a trickle-down affect on his ability to

24     work and where he could reside.

25              So I would ask that the Court think carefully -- I'm

1    sure the Court will think carefully, but ask that the Court

2    strike those types of provisions and rather leave it to the

3    discretion of probation to decide what's appropriate at a

4    particular time given his work and living context.

5         I also think, frankly, particularly with respect to

6    the restriction on minors, I just don't think that's this case.

7         The other restriction -- and counsel and I have talked

8    about it, I don't believe a requirement that a registration is

9    required here.  I don't think that the imposition in that would

03:52 10   be Numbers 10 -- Number 10 is appropriate or required here,

11   that it's not a qualifying offense for that type of

12   restriction.  That ultimately is something that is decided by

13   the state.  And again, I would leave it to probation, if

14   probation makes a determination that he needs to contact the

15   Commonwealth assuming he's back in Massachusetts, but that

16   ought not be a requirement of the supervised release.

17        And related to that -- well, I think Number 11 really

18   dovetails back to my critiques in the counseling and other

19   types of burdens of counseling that might be appropriate.  I

03:53 20   would ask that that be left to probation to decide once he goes

21   through whatever treatment he receives during what, under any

22   circumstances, will be a long incarceration.

23        The Court has heard from Mr. Graham's family.  This

24   has been a painful process, obviously, for him and a very

25   painful process for his family.  And ultimately, we are asking

1   for leniency, leniency in the circumstance still is a very,

2   very difficult sentence.  And I would ask that the Court impose

3   a sentence of 120 months with conditions as modified consistent

4   with the proposal of the 500-hour drug treatment program

5   recommendation, a recommendation that he be placed as close as

6   possible, obviously at the discretion the Bureau of Prisons,

7   but as close as possible to his family in Boston.

8           THE COURT:  Thank you, Mr. Cloherty.

9           MR. MERRITT:  Your Honor, may I just respond to one

03:54 10   factual thing?

11           THE COURT:  Yes, you may.

12           MR. MERRITT:  That is, the defense counsel has called

13   this relationship a complex relationship.  Yes, it is.  But

14   it's a relationship that was created by the defendant who used

15   the tricks of the trade, being a pimp, to create this kind of

16   dependency.

17           When the victim escaped the first time, she was asked

18   in grand jury, "Did the defendant try to get you to come back?"

19           And she said, "Yes.

03:54 20           "And what he did he say?

21           "He said, 'You can't turn a hoe into a housewife.  You

22   can't go back to being a normal girl.'  Like it's a too late

23   already.  Like I had changed.  Like I couldn't go back to being

24   a normal square, as they call it.  It wasn't possible.  I was

25   always to be a hoe and nothing more, that things weren't going

1    to go away and I would be nothing else besides a hoe for the

2    rest of my life basically."

3          Yes, so it is a complex relationship, but I don't see

4    that in any way as a mitigating factor that works in his favor.

5          THE COURT:  All right.  Thank you, Mr. Merritt.  You

6    said the victim wishes to address the Court.  She may do so,

7    but she needs to identify herself.

8          MR. MERRITT:  Where would you like her --

9          THE COURT:  At the opening here at the bar.

03:55 10          JOLENE CAPONE:  I don't want to take the stand

11    today --

12          THE COURT:  Would you please state your name, ma'am?

13          JOLENE CAPONE:  I don't want to get up here today and

14    paint this picture wrong.  I don't want to tell you that I was

15    the perfect girl, a saint, an angel by any means, because I was

16    and am a human being, imperfect in every way.  But I was 19

17    years old when Darrell Graham raped me and forced me into sex

18    trafficking.

19          I was a young girl living in a transitional shelter.

03:56 20    I was trying my best to make my life better, going to beauty

21    school and working at a minimum wage job.  It was really hard

22    feeling like I was on my own all the time.  And there were

23    times when I did get discouraged, had too much to drink or

24    partied to escape my reality.  I had little to no support

25    system in my life, no family, a couple of friends, and no one

1    really looking out for me.

2         Darrell Graham is a predator, Your Honor, and he

3    gained my trust under false pretenses.  Darrell said he wanted

4    to help me because he grew up like I did, feeling unwanted by

5    his mother and being the black sheep.  He promised to help me

6    get my driver's license.  He promised to make sure I had a roof

7    over my head and that I would never have to worry where my next

8    meal was coming from.  Darrell pretended to care about me, and

9    I admit I was fooled.  I thought that he was a nice guy.  He

03:57 10    would buy me alcohol because I was underage, which made me feel

11    cool.  He gave my friends marijuana for free, and that made me

12    feel cool, too.  He gained my trust.  He was basically my

13    neighbor.

14         We had many conversations and he had given me rides

15    home in the past.  In my 19-year-old mind, he wasn't a murderer

16    because I was still breathing.  I got home all right.  But

17    Darrell took my life in a lot of other ways.  He took my

18    innocence.  I used to trust people.  Now if someone offers to

19    hold the door, I can't accept the favor because I live in fear

03:57 20    knowing that nothing is free; that sooner or later, they will

21    come to collect what I owe them like Darrell did.

22         I know this sounds crazy because if it didn't happen

23    to me, I might not believe it either.  But what Darrell did to

24    me was brainwash.  I was kept completely isolated from the

25    world around me, not allowed to go to school, not allowed to

1    watch the news, read the paper, surf the Internet.  So you can

2    understand how I don't feel bad with the defendant not having

3    access to the computer.

4        Darrell drilled these ideas into my head over and

5    over.  He told me I was average-looking, but depending on the

6    day, sometimes he'd tell me I was ugly.  When I went from a

7    size 2 to a size 4, he told me I was getting fat and made me

8    work out to get back into my size 2 jeans.

9        Just to put this into perspective for everyone in the

03:58 10    court today, today I am a size 4.  So today, according to

11    Darrell Graham, I was overweight, in need of diet and exercise.

12    You cannot even imagine what this kind of warped thinking does

13    to a 19-year-old girl, when she hears it over and over every

14    day from the only person she's allowed contact with.

15        Many times customers would tell me I was beautiful,

16    that I deserved better, that they wanted to be my boyfriend.

17    Darrell would shut it all down, tell me they were lying and

18    remind me how many other hoes they had told this to.  Again, he

19    would tell me I was ugly.  His favorite thing to say to me was

03:59 20    that I wasn't anything before he met me and I wasn't going to

21    be anything after him.  He told me I wasn't shit before him and

22    without him I would never be shit.

23        But the worst part of Darrell's brainwashing was

24    definitely what he told me about the world.  Darrell told me

25    that all men are customers, every man in this room, that every

1   man was always going to cheat or buy prostitutes.  He said I

2   would never be anything other than a hoe.  No one could ever

3   love me because of what I was.  He said I would never be able

4   to be in a relationship because I would never trust a man

5   because of what I had seen and that no man would ever want me

6   because of what I had done.

7           I have a ring on my finger today that proves

8   different.  But Darrell kept me completely isolated from the

9   rest of the world.  I wasn't allowed to go anywhere unless it

04:00 10  was with him.  I wasn't allowed to sleep anywhere unless it was

11  with him.  And when I did have time alone, I made every attempt

12  to escape.  I was not allowed to have any money whatsoever.  I

13  received Social Security at the time for a disability, and he

14  took all my Social Security money that I had.  He counted every

15  dollar from every sex act.  I was not even allowed to keep

16  tips.  By definition, I was never a prostitute.  I was a victim

17  of human trafficking.

18          Darrell kept all my pieces of identification, ID,

19  birth certificate and Social Security card.  These are all

04:00 20  textbook elements of human trafficking.  Hearing this man plead

21  guilty only to the count of transportation for purposes of

22  prostitution makes me sick.  A prostitute by definition is

23  someone who exchanges sexual acts for money, right?  Well, I

24  never made a dime.  Darrell made the prices, and he knew

25  exactly how much money I owed him because he was there

1    monitoring every time the phone would ring, telling me what to

2    say.

3             Darrell Graham is vile and disgusting.  He preys on

4    girls like me who don't have anyone.  He sees weaknesses like

5    homelessness, substance abuse issues, mental health issues,

6    history of domestic violence, and all he sees is easy money.  I

7    was vulnerable because, who was going to notice if I just

8    disappeared?

9             Darrell has an incredibly manipulative way about him.

04:01 10   He would start conversations with me on the street that seemed

11   so innocent, asking about my day, why am I walking, why do I

12   live in a shelter.  Those are subtle ways of finding out

13   exactly what he needed to know in order to victimize me.

14   Darrell Graham beat me up on two occasions, the second of which

15   was so severe that upon escaping from him, I was hospitalized

16   for a severe concussion, the symptoms of which lasted almost a

17   month.

18             Darrell Graham raped me repeatedly on so many

19   occasions, I lost count.  When I was reprimanded for disobeying

04:01 20   him, he'd do what he called makeup sex.  But it wasn't makeup

21   sex.  It was outright rape.  Darrell Graham is guilty of

22   assault and battery, attempted murder, false imprisonment,

23   kidnapping and human trafficking.  But if transporting a

24   prostitute is how to put a monster in the closet, I guess I can

25   accept that.

1           Darrell Graham is a monster who has been targeting and

2    terrorizing defenseless women for over 30 years.  I know

3    because he bragged to me about it.  No amount of rehabilitation

4    will ever change this man.  He is and will always be committed

5    to a life of crime.  Despite entering a guilty plea, he has no

6    remorse for what he has done to me.  He's shown throughout this

7    process that he does not take the charges against him or this

8    court seriously.  I personally had to watch him snicker at the

9    mention of the terms force, fraud and coercion the last time I

04:02 10   was here.

11          Slavery was abolished almost 150 years ago, and yet

12   Darrell Graham has owned and sold women as if we're cattle.

13   I'm not owned by him, and I'm sure as hell not for sale.  No

14   choice or mistake or bad decision that I made in my 19 years of

15   life gives him the right to sell me, but he did over and over

16   and over again.

17          I wanted to go out with my friends one night.  When I

18   mentioned it to Darrell, he looked me in my face and told me,

19   "You're not a free bitch."  Well, the tables have turned.  I'm

04:03 20   finally free.  I'm free of him, free to make my own decisions

21   and pursue my own happiness, and I'm very grateful for that.

22          The longer the sentence, Your Honor, the better.  I

23   deserve a chance to rebuild my life.  I deserve a chance of

24   normalcy.  I don't deserve to live in fear anymore, and I

25   deserve to be free and happy and be a normal 22-year-old girl.

1          I'm graduating college in the spring, and someday I

2     would love to settle down and have a family of my own and not

3     have to think about him anymore.  Please just give me some

4     peace.

5          THE COURT:  Thank you.

6          Does the defendant wish to address the Court before

7     sentence is imposed?

8          MR. CLOHERTY:  Your Honor, he would prefer not to

9     speak.  He did ask me to make a statement on his behalf.  Would

04:04 10     you permit that?

11          THE COURT:  You may.

12          MR. CLOHERTY:  He asked to -- he made a mistake, and

13     he would like to apologize to his family, to the victim and to

14     the Court for his conduct.

15          He asked me to dispute some -- there were many

16     portions of the victim's statement that he disagrees with, but

17     he does seriously want to make sure the Court understands that

18     he does take this process very seriously, and he has

19     consistently taken this matter very seriously.

04:05 20          Although we dispute many of the underlying facts,

21     underlying facts stated by the defendant, he recognizes his

22     conduct and asks for the Court to be lenient, as lenient as it

23     can be, under the terms of the agreement.  So that's the

24     substance of what he asked me to say.

25          THE COURT:  Thank you.

1          Ms. Broquist, may I see you briefly at sidebar?

2          (Sidebar conference)

3          THE COURT:  Do counsel have any reason why sentence

4     ought not to be imposed at this time?

5          MR. MERRITT:  No, Your Honor.

6          MR. CLOHERTY:  No, Your Honor.

7          THE COURT:  Please stand, Mr. Graham.  Your crime was

8     a despicable one, and you deserve a long prison sentence.  Your

9     guideline calculation was going to be around the range of the

04:10 10   low end of the agreed upon sentence.  That is ten years.  But

11    you deserve more than ten years.  And it's only by virtue of

12    the extenuating circumstances that your counsel argued

13    effectively that I'm not going to go to the very highest end of

14    the sentence that is authorized under the C agreement.  I am

15    going to go to the high end of the guideline range because I

16    think it is deserved.

17          I have to be concerned here today not only with you as

18    the defendant who stands before me about to be sentenced, but I

19    have to be concerned about the victims.  And most victims don't

04:11 20   have the courage that young woman had in standing up and

21    addressing a courtroom full of people to tell us about the

22    crimes that you committed against her.  She did have the

23    courage, and the Court acknowledges it and admires it and takes

24    it into account very definitely in imposing the sentence that I

25    am about to impose.

1          You have a horrific record, even though it is in large

2     part many, many years old, but you don't seem to have learned

3     from your prior convictions.  And this sentence is intended not

4     only to afford deterrence to you so that you'll understand what

5     is entailed in such criminal activity but also, as the

6     government suggested, to send a message to any individual who

7     would force young girls into this life and to completely

8     dominate their entire being in such a way as to accomplish the

9     equivalency of slavery.  Those days, thank goodness, are long

04:13 10    gone, and this court will do everything it can to make sure

11    that they don't return.

12          Pursuant to the Sentencing Reform Act of 1984 and

13    having considered the sentencing factors enumerated in Title 18

14    of United States Code Section 3553(a), it is the judgement of

15    this Court that you, Darrell Graham, are hereby committed to

16    the custody of the Bureau of Prisons to be in prison for a term

17    of 150 months.

18          The term consists of terms of 120 months on Count 1

19    and terms of 30 months on Counts 2 and 3.  The terms on Counts

04:13 20    2 and 3 are to be served concurrently to one another but

21    consecutively to Count 1.  The Court recommends participation

22    in a Bureau of Prisons residential drug abuse program due to

23    your substance abuse history and based on an informal

24    prescreening performed by the probation office.  The Court

25    makes a judicial recommendation that you be designated to an

1    institution commensurate with security where you can

2    participate in sex offender treatment.

3            Upon release from imprisonment, you shall be placed on

4    supervised release for a term of five years on each count, such

5    terms to run concurrently.

6            Within 72 hours of release from custody of the Bureau

7    of Prisons, you shall report in person to the district to which

8    you are released.  No fine is imposed, as you do not have the

9    financial ability to pay a fine.  But it is further ordered

04:14 10   that you shall make restitution in the amount of $58,703 to the

11   victim whose name shall be made available to the United States

12   District Court.  Payment of restitution shall begin immediately

13   and shall be made according to the requirements of the Federal

14   Bureau of Prisons Inmate Financial Responsibility Program while

15   you are incarcerated and in accordance with a court ordered

16   repayment scheduled during your term of supervised release.

17           All restitution payments shall be paid to the clerk of

18   the United States District Court for transfer to the identified

19   victim.  You are to notify the United States Attorney for this

04:15 20   district within 30 days of any change of mailing or residence

21   address that occurs while any portion of the restitution

22   remains unpaid.

23           The Court grants the United States motion for entry of

24   an order of forfeiture in the form of a personal money judgment

25   and orders you to forfeit the sum of $13,500.  While under the

1    probation office's supervision, you are to comply with the

2    following terms and conditions:

3         First, you are not to commit another federal, state or

4    local crime and shall not illegally possess a controlled

5    substance.  Second, you shall refrain from any unlawful use of

6    a controlled substance and submit to one drug test within 15

7    days of release from imprisonment and at least two periodic

8    drug tests thereafter, not to exceed 50 tests per year as

9    directed by the probation office.

04:16 10        You are to submit to the collection of a DNA sample as

11   directed by the probation office and are to comply with the

12   standard conditions that have been adopted by the Court and

13   which are described in the sentencing guidelines at Section 5D

14   1.3(c) and which will be set forth in detail in the judgment

15   and committal.

16        The following extensive special conditions also apply

17   during supervised release.  You are prohibited from possessing

18   a firearm, destructive device or other dangerous weapon.  You

19   shall not have any contact direct or indirect with the victim

04:17 20   or the two other individuals whose names shall be disclosed in

21   the formal judgment and committal.

22        You shall not consume any alcoholic beverages, and you

23   are to participate in a program for substance abuse counseling

24   as directed by the probation officer, which program may include

25   testing not to exceed 50 drug tests per year to determine

1    whether you have reverted to the use of alcohol or drugs.  You

2    shall be required to contribute to the cost of services for

3    such treatment based upon your ability to pay or the

4    availability of third party payment.

5           You are to participate in a mental health evaluation

6    to determine if there is a need for anger management treatment

7    or a batterers intervention program.  And if you are directed

8    to participate in such treatment, you shall be required to

9    contribute to the cost of services for that treatment based

04:18 10   upon your ability to pay or the availability of third party

11   payment.

12          You shall use your true name and are prohibited from

13   the use of any false identifying information which include but

14   is not limited to any aliases, false dates of birth, false

15   Social Security numbers or incorrect places of birth.

16          You are to pay any fine or restitution imposed

17   according to a court ordered repayment schedule.  You are

18   prohibited from incurring any credit charges or opening

19   additional lines of credit without the approval of the

04:18 20   probation office while any financial obligation remains

21   outstanding.  And you are to provide the probation office

22   access to any requested financial information which may be

23   shared with the financial litigation unit of the United States

24   Attorney's Office.

25          If you are required under state or federal law to

1    register as a sex offender, you shall so register pursuant to

2    the Walsh Act.  Pursuant to the Adam Walsh Child Protection and

3    Safety Act of 2006, you shall register, if so required, as a

4    sex offender not later than three business days from release or

5    from sentencing, and you are to keep the registration current

6    in each jurisdiction where you reside, are employed or are a

7    student.  You shall no later than three business days after

8    each change in name, residence, employment or student status

9    appear in person in at least one jurisdiction in which you are

04:19 10   registered and inform that jurisdiction of all changes in the

11   information.  Failure to do so may not only be a violation of

12   this condition but also a new federal offense punishable by up

13   to ten years imprisonment.  In addition, you must read and sign

14   the offender notice and acknowledgment of duty to register as a

15   sex offender per the Adam Walsh Child Protection and Safety Act

16   of 2006 form.

17          You are to participate in a sexual specific evaluation

18   or sex offender specific treatment conducted by a sex offender

19   treatment provider as directed and approved by the probation

04:20 20   office.  The treatment provider shall be trained and

21   experienced in the treatment of sexual deviancy and follow the

22   guideline practices established by the Association For the

23   Treatment of Sexual Abusers.  The sexual specific evaluation

24   may include psychological and physiological training, testing,

25   which may include polygraph, ABLE screening and other types of

1   testing as approved by the probation office.  You shall

2   disclose all previous sex offender or mental health evaluations

3   to the treatment provider and shall also contribute to the

4   costs of that evaluation according to your ability as

5   determined by the probation office.

6          In submitting to a polygraph exam, you do not waive

7   your Fifth Amendment rights, and you exercise such rights --

8   your exercise of such rights will not give rise to a violation

9   proceeding.  The results of the polygraph exam may not be used

04:21 10  as evidence in court to prove that a violation of community

11  supervision has occurred but may be considered in a hearing to

12  modify release conditions and/or could initiate a separate

13  investigation.

14         You shall not possess or use a computer, Internet

15  capable device or similar electronic device or have access to

16  any online service without the prior approval of the probation

17  office.  The following instructions with respect to computers

18  are also subject to approval or disapproval by the probation

19  office.  You shall not allow the installation of a computer and

04:22 20  Internet monitoring program and/or identify computer systems,

21  Internet capable devices and similar memory and electronic

22  devices to which you have access, except computer owned by your

23  employer and not located at your residence.  The program used

24  will be designed to identify for the probation office the

25  viewing, downloading, uploading, transmitting or otherwise

1    using any images or content of a sexual or otherwise

2    inappropriate nature.  You shall contribute to the costs of

3    such monitoring based upon your ability to pay as deemed

4    appropriate by the probation office, and you shall not attempt

5    to remove or otherwise defeat such systems and shall allow the

6    probation office to examine such computer and receive data from

7    it at any reasonable time.

8         You shall advise anyone in your household that any

9    computer in that household may be subject to computer

04:23 10   monitoring.  You are not to possess or use a computer, Internet

11   capable device or similar electronic device without the prior

12   permission of the probation office, and any device previously

13   mentioned should not be used to access child pornography or to

14   communicate with any individual or group for the purpose of

15   promoting sexual relations.  You are prohibited from entering

16   chat rooms to send or receive instant messages or to send or

17   receive e-mail with attached electronic files through any

18   electronic medium unless previously approved by the probation

19   office, and you are not to utilize any sex-related telephone

04:23 20   services, websites or electronic bulletin boards.

21        You are to disclose all account information relative

22   to Internet access, social networking and e-mail, including

23   user names and passwords, to the probation office and you are

24   also, if requested, to provide a list of all software, hardware

25   on your computer as well as telephone, cable and Internet

1   service provider billing records and any other information

2   deemed necessary by the probation office to monitor your

3   computer use.

4          And you are to provide the probation office with

5   access to any requested financial information for purposes of

6   monitoring their compliance with the imposed computer access

7   monitoring condition, including but not limited to credit card

8   bills, telephone bills, and cable and satellite television

9   bills; and you are, prior to accepting any form of employment,

04:24 10  you shall seek the approval of the probation office in order to

11  allow it the opportunity to assess the level of risk to the

12  community you may pose if employed in a particular capacity.

13         And finally, it is ordered that you shall pay to the

14  United States a special assessment of $300, which shall be due

15  and payable immediately.

16         Mr. Graham, you have a right to appeal this sentence.

17  If you choose to appeal, you must do so within 14 days.  If you

18  cannot afford an attorney, an attorney will be appointed on

19  your behalf.  Do you understand that?

04:25 20         THE DEFENDANT:  Yes, sir, I do.

21         THE COURT:  Is there any further business to come

22  before the court in these proceedings?

23         MR. MERRITT:  I don't believe so, Your Honor.

24         MR. CLOHERTY:  Excuse me a second.  Nothing.

25         THE COURT:  We're adjourned.

1          MR. CLOHERTY:  Thank you, Your Honor.

2          DEPUTY CLERK:  All rise.  The defendant is remanded.

3          (Whereupon the proceedings adjourned at 4:25 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                CERTIFICATE OF OFFICIAL REPORTER

2

3            I, Kelly Mortellite, Realtime Court Reporter, in

4    and for the United States District Court for the District of

5    Massachusetts, do hereby certify that pursuant to Section 753,

6    Title 28, United States Code that the foregoing is a true and

7    correct transcript of the stenographically reported proceedings

8    held in the above-entitled matter and that the transcript page

9    format is in conformance with the regulations of the Judicial

10   Conference of the United States.

11                   Dated this 12th day of November, 2014.

12

13                   /S/ KELLY MORTELLITE

14                   _____

15                   KELLY MORTELLITE, RPR, CRR

16                   OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25